Argued and submitted April 26, affirmed November 14, 2013, petition for review denied April 17, 2014 (355 Or 317)

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**DONALD DANIEL LABAR,**
*Defendant-Appellant.*

Lincoln County Circuit Court
103435; A148485

314 P3d 328

Kristin A. Carveth, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Cecil A. Reniche-Smith, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Egan, Judge, and De Muniz, Senior Judge.

ARMSTRONG, P. J.

## ARMSTRONG, P. J.

Defendant appeals a supplemental judgment for restitution in the amount of $36,911.89 for property that defendant stole in a robbery at a Rite Aid pharmacy. Defendant contends that the court erred by awarding restitution to Rite Aid based on the retail value of the stolen property. According to defendant, the proper measure of economic damages for purposes of restitution was the wholesale value of the property and any profits lost by the store as a result of the theft. We reject defendant's argument and affirm.

A jury convicted defendant of a number of crimes arising from robberies that defendant committed at a Newport Rite Aid pharmacy on March 10, 2010, and July 11, 2010. In the March 10 robbery, defendant entered the Rite Aid, brandished what appeared to be a handgun, and demanded that the pharmacist give him the store's entire supply of Oxycontin.[1] The pharmacist filled a plastic bag with the store's unopened bottles of the drug, which contained thousands of tablets of assorted dosages. Defendant grabbed the bag and fled. He returned to rob the Rite Aid pharmacy a second time on July 11, 2010, making off with four bottles of tablets.

A Rite Aid pharmacist testified at defendant's trial about the quantity and value of the Oxycontin tablets that defendant had stolen in the March 10 robbery. She used the store's controlled-drugs auditing program to determine the number of tablets that defendant had taken and another computer program to calculate the value of the tablets. As she explained,

> "[w]e have a program that checks the price, if someone wants to pay a cash price for a pill. So I just entered in the drug name, the code for that drug and bottle size, and the quantity missing, and used that dollar amount to estimate the cost."

The trial court also admitted into evidence an exhibit that listed the quantity of Oxycontin tablets taken on March 10 and their calculated value, totaling $36,911.89. The state did not present any evidence about the value of the drugs

---

[1] Oxycontin is a brand name for the generic drug oxycodone.

that defendant stole in the July 11 robbery. As noted, the jury convicted defendant for a number of crimes related to the robberies.

After entering a judgment on defendant's convictions, the trial court entered a supplemental judgment awarding restitution to Rite Aid in the amount of $36,911.89, based on the retail value of the Oxycontin tablets that defendant had stolen on March 10. In making that award, the trial court rejected defendant's argument that the proper measure of Rite Aid's economic damages was "what it cost Rite Aid to basically replace the inventory that was taken." The court did not award restitution for the tablets taken in the July 11 robbery because the state failed to present evidence by which to determine the value of those tablets.

When a person is convicted of a crime and the "court finds from the evidence presented that a victim suffered economic damages," the court shall order the defendant to "pay the victim restitution in a specific amount that equals the full amount of the victim's economic damages as determined by the court." ORS 137.106(1)(a). For purposes of such an award, "economic damages" includes

"objectively verifiable monetary losses including but not limited to *** reasonable and necessarily incurred costs due to loss of use of property and reasonable costs incurred for repair or for replacement of damaged property, whichever is less."

ORS 31.710(2)(a).

Defendant contends on appeal that Rite Aid would be made economically whole if it were paid the cost to replenish its Oxycontin inventory at the Newport store, that is, if it were paid the wholesale cost of the tablets that defendant stole, plus any lost profits that it suffered from sales that it could not make while awaiting the replacement of the store's inventory. The state did not present evidence by which to make those calculations. Hence, in defendant's view, the state failed to present evidence by which the court could award restitution to Rite Aid for its economic damages. Defendant is mistaken.

The economic damages that a court may award as restitution to a crime victim are the economic damages that

the victim could recover against the defendant in a civil action for the defendant's conduct. *State v. Onishchenko*, 249 Or App 470, 476, 278 P3d 63, *rev den*, 352 Or 378 (2012). Here, the applicable civil action that Rite Aid could bring against defendant would be an action for conversion of the Oxycontin tablets.[2] Conversion "'is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the *full value* of the chattel.'" *Mustola v. Toddy*, 253 Or 658, 663, 456 P2d 1004 (1969) (quoting *Restatement (Second) Torts* § 222A(1) (1965)) (emphasis added). In a civil action for conversion, "[t]he Oregon Supreme Court 'has [long] held that the measure of damages for the conversion of personal property is the reasonable market value of the goods converted at the time and place of conversion.'" *Hayes Oyster Co. v. Dulcich*, 170 Or App 219, 226, 12 P3d 507 (2000), *rev den*, 339 Or 544 (2005) (quoting *Hall v. Work*, 223 Or 347, 357, 354 P2d 837 (1960)).

The state presented evidence of the retail price at which Rite Aid sells the Oxycontin tablets that defendant stole. No other evidence of value was presented to the trial court. In light of the record, the trial court did not err in finding the market value of the Oxycontin tablets to be their retail value nor in awarding restitution to Rite Aid on that basis.

Affirmed.

---

[2] Defendant relies on *Willamette Quarries v. Wodtli*, 308 Or 406, 412, 781 P2d 1196 (1989), as support for his proposed measure of Rite Aid's economic damages. That case concerns the recovery of lost profits as damages for breach of a contract and is inapposite to the award of damages in this case.