## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## ANDREW DUANE McCLELLAND,
*Defendant-Appellant.*

Coos County Circuit Court
13CR1432; A157254

372 P3d 614

Peter Gartlan, Chief Defender, and Kristin A. Carveth, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Paul L. Smith, Deputy Solicitor General, and Dustin Buehler, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Egan, Judge, and Shorr, Judge.

**SHORR, J.**

Defendant assigns error to the trial court's order that he pay $55,490.69 in restitution following his convictions for misdemeanor assault in the fourth degree, ORS 163.160, and interfering with a peace officer, ORS 162.247. In the underlying assault, defendant caused the victim to incur substantial medical bills, the largest of which arose out of the victim's resulting knee surgery. In his first assignment of error, defendant claims that the trial court erred in ordering restitution of $27,677.50, the amount of the hospital bill for the victim's knee surgery, because there was no testimony or evidence that the hospital bill was reasonable. In his second through seventh assignments of error, defendant challenges the trial court's imposition of various smaller restitution charges, ranging from $134 to $7,701 for assorted medical services, equipment, and medication.[1] Defendant acknowledges that he did not preserve his second through seventh assignments of error by raising objections in the trial court to the imposition of those costs, but asks us to exercise our discretion under ORAP 5.45(1) to review those assignments as error apparent on the record.

For the reasons discussed below, we conclude that the trial court erred when it ordered restitution of $27,677.50 for the hospital bill arising out of the victim's knee surgery because the state did not present evidence that the hospital bill reflected "reasonable charges." Because we remand this case for resentencing, we do not reach defendant's second through seventh assignments of error.

We begin by stating the facts in the light most favorable to the state. *State v. Gibson*, 338 Or 560, 562, 113 P3d 423, *cert den*, 546 US 1044 (2005) (reviewing the facts in the light most favorable to the state where the jury found the defendant guilty); *see also State v. Kirkland*, 268 Or App 420, 421, 342 P3d 163 (2015) (stating "[w]e review the evidence supporting the trial court's restitution order in the light most favorable to the state"). In September 2013, defendant was dating and living with the victim's sister at

---

[1] There are a number of other bills and costs imposed by the trial court as restitution that defendant does not challenge on appeal.

her apartment in Bandon, Oregon. The victim lived in an apartment above his sister. Defendant and the victim's sister got into an argument and were yelling at each other. Defendant stood up to leave and knocked the victim's sister over on his way out of the apartment. Defendant also grabbed her keys on his way out, and the commotion spilled out into the driveway and adjoining street.

Upon hearing the commotion below, the victim came out of his upstairs apartment, saw his sister crying and upset, and began to yell at and walk towards defendant. Defendant sprinted back towards the victim, tackled him from the side, bit him, and then began punching him in the head. As a result, defendant dislocated the victim's shoulder, broke his nose, and caused significant damage to his left knee, including the tearing of the victim's anterior cruciate ligament.

Following defendant's conviction for assault, as well as a conviction for interfering with a peace officer, the state sought restitution of $55,490.69. That amount reflects the victim's various medical expenses caused by the assault and his lost wages resulting from the assault. As noted above, defendant objected at the restitution hearing to the hospital bill for the victim's knee surgery, which totaled $27,677.50. Defendant objected that the hospital bill *alone* did not establish that the charges were "reasonable" medical charges as required by the criminal restitution statute, ORS 137.106(1)(a), and its definition of recoverable "economic damages" under ORS 31.710. Although defendant had some additional objections to the victim's mileage and gas costs for travelling to the doctor, had questions about insurance reimbursements, and raised an issue about defendant's ability to pay restitution, defendant did not object to any of the other medical bills as unreasonable.

In response to the objection to the hospital bill, the trial court noted that "usually in civil cases the reasonableness of the fees is presented through a doctor or somebody who is sufficiently expert in that to come in and say * * * this was reasonable." The trial court noted that there might be a distinction between economic damages in civil law when compared to criminal restitution, but ultimately concluded

that, while a one-day hospital bill for surgery of $27,677.50 may "seem very high," it was reasonable in light of the fact that it arose from and was necessary to address the victim's significant knee injuries. The trial court also relied on an assertion that it was "common sense" and there was no objection to the nature of the knee injury. Defendant first assigns error to that ruling.

Turning to the standard of review, we review orders of restitution for errors of law. *State v. Thorpe*, 217 Or App 301, 303, 175 P3d 993 (2007). "We are bound by the trial court's factual findings if they are supported by any evidence in the record[.]" *State v. Pumphrey*, 266 Or App 729, 730, 338 P3d 819 (2014), *rev den*, 357 Or 112 (2015).

The process by which the state may seek to recover restitution against a criminal defendant and on behalf of a victim is set forth by statute. ORS 137.106(1)(a) provides, in relevant part:

> "When a person is convicted of a crime * * * that has resulted in economic damages, the district attorney shall investigate and present to the court * * * evidence of the nature and amount of the damages. * * * If the court finds from the evidence presented that a victim suffered economic damages, in addition to any other sanction it may impose, the court shall enter a judgment or supplemental judgment requiring that the defendant pay the victim restitution in a specific amount that equals *the full amount of the victim's economic damages* as determined by the court."

(Emphasis added.) "Economic damages" is specifically defined by statute. ORS 137.103(2). With one exception not relevant here, "[e]conomic damages * * * [h]as the meaning given that term in ORS 31.710." *Id.* ORS 31.710(2)(a), in turn, defines the term to mean, in relevant part, "objectively verifiable monetary losses including but not limited to *reasonable charges necessarily incurred for medical, hospital, nursing and rehabilitative services* and other health care services." (Emphasis added.)

We have concluded that "there are three prerequisites to an order of restitution: (1) criminal activities, (2) economic damages, and (3) a causal relationship between the two." *Pumphrey*, 266 Or App at 733. Defendant's appeal

implicates only the second prerequisite, economic damages, and particularly that term's definition as "reasonable charges necessarily incurred for * * * hospital * * * services."

We have reviewed the definition of economic damages in ORS 31.710 many times, both in the context of criminal restitution orders and civil cases. Although criminal restitution has just three simple elements and is set forth in the criminal statute, ORS 137.106(1)(a), that statute, through ORS 137.103(2), incorporates the civil statutory definition of economic damages set forth in ORS 31.710(2)(a). As the Supreme Court recently explained in *State v. Ramos*, 358 Or 581, 588, 368 P3d 446 (2016), "neither ORS 137.106 nor the definition of economic damages in ORS 31.710(2)(a) *requires* that the damages awarded in restitution be the damages that would be recoverable in a civil action" because such damages must only be those that "result from defendant's criminal activity." (Emphasis added.) Still, "the legislature's cross-reference to the definition of 'economic damages' applicable in civil actions, and the legislature's purpose in creating the restitution procedure as a substitute for a civil proceeding, makes civil law concepts relevant to our interpretation of ORS 137.106." *Id.* at 594.

With respect to the general definition of economic damages in ORS 31.710(2)(a), we have concluded that such damages do not have to be proved as "objectively *verified*," but rather the legislature only required that they be "objectively *verifiable* monetary losses." *See DeVaux v. Presby*, 136 Or App 456, 463, 902 P2d 593 (1995) (noting distinction with respect to *former* ORS 18.560 (1987), *renumbered as* ORS 31.710 (2003) (emphasis in original)).[2] Thus, as a general matter, damages that are not verified or quantified, but are "capable of verification through objective facts" or "capable of quantification," are "economic damages." *Id.* Additionally, as discussed further below, we have held that, in enacting ORS 31.710(2)(a), the legislature did not intend to impose "any particular pleading or proof requirements"

---

[2] *Former* ORS 18.560 (1987) "was enacted in 1987 as part of a larger 'package' of so-called 'tort reform' legislation." *DeVaux*, 136 Or App at 461. All compensatory damages "arising out of bodily injury" were divided into different classes of "economic" and "non-economic" losses. *Id.* The legislature then imposed its own "cap" on an injured person's noneconomic losses. *Id.*; *former* ORS 18.560(1) (1987).

to prove objectively verifiable economic damages. *Id.* at 463-64 (rejecting the argument that *former* ORS 18.560 (1987) imposed any particular "quantum of proof for recovery" of economic damages).

In recent cases, we have examined the specific types of economic damages that the state may recover under ORS 31.710(2)(a) as well as the kind of evidence available to prove those damages. In *State v. Labar*, 259 Or App 334, 337, 314 P3d 328 (2013), *rev den*, 355 Or 317 (2014), we held that evidence of the retail price of Oxycontin tablets was sufficient evidence of "economic damages" for the trial court to award restitution to the victim for the defendant's theft of thousands of such tablets from a retail pharmacy. Applying ORS 31.710(2)(a) in the context of the state seeking a compensatory fine against a criminal defendant under ORS 137.101, we have concluded that a trial court may properly impose a fine of the full wholesale value of a large quantity of new shoes, which the defendant had stolen from the victim's warehouse. *State v. Onishchenko*, 249 Or App 470, 477-78, 278 P3d 63, *rev den*, 352 Or 378 (2012). In that case, we determined that the victim's testimony of what he paid for the shoes was, "alone," sufficient to support the trial court's determination of the victim's economic damages. *Id.* Those cases demonstrate that, as a general matter, testimony based on a victim's personal knowledge or evidence of retail value, alone, is sufficient to demonstrate objectively verifiable economic damages.

In addition to those cases discussing the types of recoverable economic damages, and the evidence required to prove them, we have also examined in both civil and criminal restitution cases the amount and kind of proof required to demonstrate that a victim's hospital or medical services are "reasonable." While ORS 31.710(2)(a) generally defines economic damages as those that are "objectively verifiable monetary losses," the statute specifically includes, within that definition, "reasonable charges necessarily incurred for medical, hospital, nursing and rehabilitative services and other health care services." ORS 31.710(2)(a). Therefore, with respect to medical services, the state has to prove that the cost of such services is "reasonable." Defendant contends

that proof of the victim's cost of medical services through a hospital's or doctor's invoice, alone, is insufficient to prove the reasonableness of the charge for those services.

Based on the text of ORS 31.710(2)(a), which permits only recovery of "reasonable" hospital and medical services, and our review of several prior civil and criminal restitution cases addressing the same issue, we agree with defendant that submission of a hospital bill, without more, is insufficient proof for recovery of "reasonable" hospital or medical services. Some additional testimony or evidence is required to support the reasonableness of the bill for the hospital or medical services.

As we have explained, when summarizing the common law on economic damages that predated the enactment of ORS 31.710(2)(a),

> "Oregon courts have long held that a plaintiff seeking damages for medical expenses must establish the reasonableness of those expenses and cannot simply rely on a medical bill for that purpose."

*White v. Jubitz Corp.*, 219 Or App 62, 68, 182 P3d 215 (2008), *aff'd*, 347 Or 212 (2009) (citing *Tuohy v. Columbia Steel Co.*, 61 Or 527, 532, 122 P 36 (1912)). Further, at common law,

> "Oregon courts did not impose a quantum of proof on either party to show what actually had been paid but, rather, required proof that the amount billed for services was reasonable. To do that, a plaintiff generally presented evidence of the reasonableness and necessity of medical expenses through the testimony of physicians and other medical professionals familiar with the injury, treatment, and costs involved."

*White*, 219 Or App at 68. Thus, although the common law did not impose a quantum of proof necessary to establish the existence of expenses for medical services, and did not require proof that the expenses were *actually* paid or billed," the common law still required the plaintiff to establish the "objective reasonableness of those expenses." *Id.* (emphasis in original). The Supreme Court held at common law that there must be evidence of the reasonableness of medical bills outside of the existence of the bills themselves. *Tuohy*, 61 Or at 532-33.

We have held that, when the legislature enacted ORS 31.710(2)(a) and its definition of economic damages, it did so "in light of that underlying law." *White*, 219 Or App at 68. As a result, we have consistently concluded before and after the adoption of ORS 31.710 and both in the context of civil cases and, in *dicta*, in a criminal restitution order that "a plaintiff seeking damages for medical expenses must establish the reasonableness of medical costs, through testimony or other evidence, *beyond the existence of a medical bill.*" *Id.* (emphasis added); *see also State v. Jordan*, 249 Or App 93, 98, 274 P3d 289, *rev den*, 353 Or 103 (2012) (stating, in *dicta*, in a criminal restitution case that evidence of "medical bills do not establish reasonable charges necessarily incurred" for the purpose of ORS 31.710(2)(a)); *Ellington v. Garrow*, 213 Or App 490, 496-97, 162 P3d 328 (2007) (noting the "longstanding rule that a plaintiff seeking damages for personal injuries must establish the reasonableness of any medical expenses claimed as damages," but holding that the plaintiff did so when a doctor testified to the reasonableness of physical therapy bills); *Lea v. Farmers Ins. Co.*, 194 Or App 557, 560-61, 96 P3d 359 (2004) (noting that, in a civil case, evidence of the amount of medical expenses is not itself evidence of their reasonableness).[3]

The state argues that, even if we have held in the civil law context that evidence of medical bills, alone, does not establish reasonableness, the criminal restitution law is not as demanding because criminal restitution requires only "evidence of the nature and amount of the damages," citing ORS 137.106(1)(a). The state's argument ignores the balance of the statutory text that makes clear that "the

---

[3] As noted above, we held in *Labar*, 259 Or App at 337, that evidence of the retail price at which a pharmacy sold Oxycontin was sufficient evidence for the state to recover restitution for a pharmacy that was a victim of a theft of many Oxycontin tablets. Although the state does not cite *Labar* in its briefs, we still note that *Labar* presents a different issue and facts than presented here. First, ORS 31.710(2)(a) requires proof of reasonableness as to "medical, hospital * * * and other health care *services.*" (Emphasis added.) It does not expressly apply a reasonableness standard to the price of medical products like drugs. Second, *Labar* involved an economic loss by a retailer, and the state was seeking to demonstrate that loss by showing the total retail price of the stolen drugs. The proof of loss was akin to a business plaintiff's demonstration of lost sales or revenue. The reasonableness of an individual's past incurred charges for medical care was not at issue.

damages" referenced must be "economic damages" and provides the court the ability to award restitution for "the full amount of the victim's economic damages as determined by the court." ORS 137.106(1)(a). As discussed above, the criminal restitution statute, ORS 137.103(2), then defines economic damages based on a civil statute's definition of economic damages by reference to ORS 31.710(2)(a), which includes the "reasonableness" requirement for bills for medical and hospital services. *See also Ramos*, 358 Or at 594 (noting the legislature's incorporation of some civil law concepts into criminal restitution proceedings).

The state also contends that evidence of the hospital bill, alone, may be evidence of the reasonableness of the bill in a criminal restitution case, even assuming that it would not be admissible for that purpose in a civil case, because criminal restitution does not require "any particular form" of evidence, citing *State v. Noble*, 231 Or App 185, 189, 217 P3d 1130 (2009). That argument is unavailing. *Noble* merely held that the evidence in support of a restitution award may be the evidence presented at trial, and does not have to be additional evidence presented following a post-trial investigation separate from the investigation of the crime itself. *Id.* That evidence in support of restitution only has to be presented "prior to the time of sentencing." *Id.* *Noble* has no application in this context.

Accordingly, based on the text of ORS 31.710(2)(a), which requires proof that any charges for hospital or medical services are "reasonable," and the longstanding case law that proof of reasonableness requires more than evidence of the medical charges themselves, we hold that the trial court erred in applying the law when it overruled defendant's objection to the use of the hospital bill for $27,677.50 as evidence of the reasonableness of those charges and then in including them in the order of restitution. We also hold that the trial court could not simply rely on a review of the bill and "common sense" to conclude that such charges were reasonable.[4] The finder of fact cannot be presumed to know

---

[4] The trial court correctly noted that it was undisputed that the victim was injured by defendant, incurred the medical bill, and the victim's surgery was necessary. Regardless, as discussed above, ORS 31.710(2)(a) still requires proof that the charges for the hospital services were "reasonable."

what is a "reasonable" charge for medical services based on their own experience and without further evidence, particularly given that many medical services are paid by third parties and insurance companies. *Lea,* 194 Or App at 560-61.

Because we conclude that the trial court erred in imposing restitution and, accordingly, remand for resentencing, we do not reach defendant's unpreserved second through seventh assignments of error.

Remanded for resentencing; otherwise affirmed.