58 June 5, 2024 No. 374

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

TAYLOR BRYANT BRIGHT,
*Defendant-Respondent.*

Curry County Circuit Court
21CR16034; A179954

Cynthia Lynnae Beaman, Judge.

Argued and submitted April 24, 2024.

Greg Rios, Assistant Attorney General, argued the cause for appellant. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Matthew Blythe, Deputy Public Defender, argued the cause for respondent. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Before Aoyagi, Presiding Judge, Joyce, Judge, and Jacquot, Judge.

JOYCE, J.

Reversed and remanded.

**JOYCE, J.**

In this criminal case, the state appeals from an order denying restitution after a victim sought restitution for counseling costs for herself and her two daughters. The trial court denied restitution because it concluded that the state had not proved that the costs were "reasonable" under *State v. McClelland*, 278 Or App 138, 372 P3d 614, *rev den*, 360 Or 423 (2016). Because we conclude that the trial court applied the wrong legal standard, we reverse.

The facts underlying the criminal convictions are few and undisputed. Defendant sexually assaulted the victim, who has two daughters. After the assault, the victim sought counseling both for herself and for her daughters, because the assault had caused strife among the family (in part because the daughters have a half-sister who is engaged to defendant). The victim sought restitution for the counseling costs. ORS 137.106(1)(a) (2016) *amended by* Or Laws 2022, ch 57, § 1. Defendant objected.

At the restitution hearing, the state presented evidence that the victim researched counselors online and chose one for her and one for her daughters. The state offered documents that summarized the counselors' backgrounds and qualifications, as well as their rates. The profiles were both "verified" by Psychology Today. Both counselors charged a range of fees. The state also presented records of payments for all the counseling sessions. The victim testified that the rates for the counselors that she chose were comparable to the rates that she found for other counselors. The victim, who is a "qualified mental health associate" and works in the mental health field, also testified that the rates were reasonable compared to the ones that, in her training and experience, others charged. Defendant objected to that testimony and the court sustained the objection, a fact that we mention because it played an important role in the court's decision.

At the close of evidence, defendant argued that under *McClelland*, the state needed to have an "expert witness to go to the reasonableness of costs," yet had presented "nothing" with respect to whether the expenses

were reasonable. *See also* ORS 137.103(2) (incorporating the definition of "economic damages" from ORS 31.710 into the restitution statute, which in turn requires proof of "objectively verifiable monetary losses," including "reasonable charges"). In defendant's view, the state needed to provide testimony from someone "at the hospital or a counselor [who] is very familiar with the rates of what is a reasonable rate." In response, the state argued that *McClelland* was distinguishable because it involved medical bills, as opposed to out-of-pocket expenses. The state pointed to the victim's testimony about the qualifications of the providers and their rates, which the state argued established the reasonableness of their billing rates.

     The court rejected the state's request for restitution, concluding that it could not impose restitution under *McClelland*:

> "I understand [the state] asked whether or not the victim herself felt that the fees were reasonable or that the costs were reasonable. The question about her experience was—the answer was not allowed. It was sustained, the objection. And for the victim herself to indicate that she thinks they're reasonable does not seem to satisfy *State [v.] McClelland*. Certainly this becomes a lack of evidence or what seems to be a technical failure, but I don't think based on *State [v.] McClelland* I can order the restitution, so the restitution is denied."

     The state appeals, arguing that the trial court misconstrued *McClelland* and subsequent cases by requiring both documentary and explanatory testimony about the reasonableness of the medical expenses.[1] "It is a question of law whether a trial court must deny restitution because the state failed to provide sufficient evidence of reasonableness." *State v. Campbell*, 296 Or App 22, 26, 438 P3d 448 (2019), *rev'd on other grounds*, 366 Or 825, 470 P3d 369 (2020). We conclude that the trial court misconstrued *McClelland* and the cases that followed. Understood together, *McClelland* and subsequent cases establish that, to prove that a cost is reasonable, the state must offer some evidence beyond

---

[1] The state does not assign error to the trial court's ruling excluding the victim's testimony about her experience in the mental health field and that, based on that experience, the rates were reasonable.

just evidence of payment itself. However, that evidence does not need to come from an expert or even from witness testimony; rather, it is enough that there is some evidence that the requested restitution corresponds to relevant market rates.

We begin with *McClelland*. There, the state tried to support an award of restitution by presenting an unpaid hospital bill. 278 Or App at 140. We held that the bill was insufficient to show that the costs were reasonable and that "[s]ome additional testimony or evidence is required." *Id.* at 144. In reaching that conclusion, we relied on "longstanding case law" that requires more than evidence of the medical charges themselves. *Id.* at 146. We further rejected the idea that a court could rely on its common sense to assess the reasonableness of the charges, given that it cannot be presumed to know what medical services are reasonable, particularly when many services are paid for by third parties and insurance companies. *Id.* at 146-47.[2]

Following *McClelland*, the Supreme Court addressed, in the context of a car accident, "whether the evidence that the victim's insurer had paid the bill was sufficient to establish that the cost of repairs was reasonable." *State v. Aguirre-Rodriguez*, 367 Or 614, 617, 482 P3d 62 (2021). The documentary evidence included insurance documentation, a repair estimate, and photos of the car. *Id.* at 616. The court concluded that, although evidence of a payment of a charge alone could not establish that the amount is reasonable, that combination of evidence did meet that standard. *Id.* at 624.

More recently, we concluded that a market rate— or the value "ascribed to the services in a given market"— is "a reasonable amount for a victim to recover for medical expenses." *Campbell*, 296 Or App at 30-31. In reaching that conclusion, we emphasized that expert testimony is not required to establish reasonableness. *Id.* at 34.

---

[2] The legislature recently amended the restitution statute, ORS 137.106, to provide that "economic damages will be presumed reasonable if the damages are documented in the form of a record, bill, estimate or invoice from a business, health care entity or provider or public body[.]" Or Laws 2022, ch 57, § 1. That amendment applies to judgments entered on or after the January 1, 2023, effective date. *Id.* The restitution proceeding here occurred in October 2022 and the amendment is thus inapplicable.

Taken together, those cases establish that, to prove that a cost is reasonable, the state must offer some evidence beyond just evidence of payment itself. That evidence, however, does not need to come from an expert or even from witness testimony; rather, it is enough that there is evidence that the requested restitution corresponds to relevant market rates.

The evidence here meets that standard. The state offered profiles of the counselors, verified by Psychology Today, along with their respective rates. The victim testified that the rates that the two counselors charged—which were similar to one another—were comparable to the rates of other counselors that she observed as she was researching counselors. And, as the state observes, the victim paid the counseling costs, which is additional evidence of the amount that a market participant is willing to pay. *See White v. Jubitz Corp.*, 347 Or 212, 243, 219 P3d 566 (2009) ("The amount that one pays for services * * * often may be an important factor in determining the reasonable value of those services."); *Black's Law Dictionary* 1691 (9th ed 2009) (defining "fair market value" as "[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction; the point at which supply and demand intersect").

In reaching that conclusion, we disagree with defendant that the trial court made dispositive factual findings that are entitled to deference on appeal. As we read the trial court's ruling, it concluded that, as a matter of law, the state's evidence was insufficient because it failed to present testimony—expert or otherwise—supporting the reasonableness of the medical expenses. As we have explained above, that is legally incorrect.[3]

Reversed and remanded.

---

[3] Defendant urges us to affirm on the ground that the counseling charges for the daughters were not reasonably foreseeable costs of defendant's crime. We decline to affirm on that alternative basis in light of the court's ruling on that question.